KATRINA LOUISE MATHEWS, APPELLEE AND CROSS-APPELLEE, V. MARK WINSLOW MATHEWS, APPELLEE AND CROSS-APPELLANT, AND DOUGLAS COUNTY, NEBRASKA, APPELLANT.

676 N.W.2d 42

Filed March 19, 2004.   No. S-02-851.

James S. Jansen, Douglas County Attorney, and Bernard J. Monbouquette for appellant.

David B. Latenser, of Latenser & Johnson, P.C., for appellee Mark Winslow Mathews.

Annette Farnan of Nebraska Legal Services, Omaha, and David M. McManaman, of Nebraska Legal Services, Lincoln, for appellee Katrina Louise Mathews.

Thomas K. Harmon, of Respeliers & Harmon, P.C., for Lynnette Z. Boyle, guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

In June 2002, the marriage between Katrina Louise Mathews and Mark Winslow Mathews was dissolved. Issues regarding various aspects of the divorce decree are raised in this appeal, including the trial court's determinations in regard to child custody, child support, and the division of the marital debts. In addition, we must determine whether Katrina and Mark were properly found to be indigent under Neb. Rev. Stat. § 42-358(1) (Cum. Supp. 2002), thereby making Douglas County responsible for the guardian ad litem fees.

## II. BACKGROUND

On January 2, 1988, Katrina and Mark were married in Dallas, Texas. In the following years, four children were born to the marriage. The parties separated in December 1999.

On January 20, 2000, Katrina filed a petition for legal separation. On January 28, the parties entered into an agreement which provided for, inter alia, temporary custody, visitation, and child support. On February 18, the court granted Katrina's oral motion for the appointment of a guardian ad litem (GAL).

Trial began on the separation action on December 14, 2000. At the end of the day, the matter was recessed until February 26, 2001. Before the trial recommenced, on February 9, Katrina filed a second amended petition requesting, inter alia, dissolution of the marriage, custody of the children, and child support. Mark filed his answer and cross-petition on June 18. In his cross-petition, Mark requested, inter alia, custody of the children and child support.

On September 28, 2001, Mark filed a motion to require the GAL to withdraw. Essentially, Mark argued that the GAL was biased in favor of Katrina. On October 10, the court appointed counsel for the GAL. A hearing was held on the motion on November 8, and the court overruled Mark's motion at the end of the hearing.

The trial on the dissolution action began on January 22, 2002. On June 11, the court entered its decree. The court determined that the marriage was irretrievably broken and should be dissolved. In addition, the court determined that it was in the best interests of the four minor children to be in the custody of Katrina, subject to reasonable visitation with Mark. The court ordered Mark to pay child support in the amount of $1,142.56 per month. The court also divided the marital property and ordered each party to pay his or her own attorney fees and costs.

Thereafter, Mark moved for a new trial, asserting certain errors of law set forth below in the assignments of error. The court, after notice was given to Douglas County, received evidence and heard arguments on the GAL's application for fees and Mark's motion for a new trial. In its July 26, 2002, order, the court found that both parties were indigent and ordered Douglas County to pay the GAL fees. In addition, the court overruled Mark's motion for a new trial.

Douglas County filed a timely notice of appeal with respect to the district court's indigency determination, and Mark cross-appealed from the court's order overruling his motion for new trial regarding issues related to the divorce decree.

### III. ASSIGNMENTS OF ERROR

Douglas County assigns, restated, that the trial court erred (1) in finding Katrina and Mark to be indigent for purposes of § 42-358 and (2) in ordering Douglas County to pay the GAL fees.

In his cross-appeal, Mark assigns, renumbered and restated, that the trial court erred (1) in failing to order Katrina's counsel, Nebraska Legal Services, to withdraw; (2) in failing to disqualify the GAL; (3) in awarding custody of the children to Katrina; (4) in its calculation of child support; (5) in its division of the marital debt; (6) in finding Katrina indigent for purposes of payment of her share of the GAL fees; and (7) in failing to award attorney fees to Mark.

### IV. STANDARD OF REVIEW

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn., ante* p. 158, 673 N.W.2d 15 (2004).

■ In an original divorce action, determinations as to custody in dissolution proceedings are reviewed de novo on the record, but such determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of that discretion. *Davidson v. Davidson,* 254 Neb. 357, 576 N.W.2d 779 (1998).

■ The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Claborn v. Claborn, ante* p. 201, 673 N.W.2d 533 (2004).

■ The division of property is a matter entrusted to the discretion of the trial judge, which will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Schuman v. Schuman,* 265 Neb. 459, 658 N.W.2d 30 (2003).

■ In an action for dissolution of marriage, the award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Medlock v. Medlock,* 263 Neb. 666, 642 N.W.2d 113 (2002).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

## V. ANALYSIS

### 1. DOUGLAS COUNTY'S APPEAL: INDIGENCY DETERMINATION

On February 18, 2000, a GAL, who is a practicing lawyer, was appointed to conduct an investigation to protect the interests of the parties' four children. The GAL did conduct an investigation and filed a written report with the court. On June 4, 2002, the GAL filed an application for payment of fees. After a hearing, the court determined that the GAL charges were fair and reasonable and that the GAL was entitled to fees totaling $3,089. In addition, the court determined that Katrina and Mark were indigent and ordered Douglas County to pay the GAL fees. On appeal, Douglas County argues that Katrina and Mark are not indigent for purposes of § 42-358.

Section 42-358(1) provides:

> The court may appoint an attorney to protect the interests of any minor children of the parties. Such attorney shall be empowered to make independent investigations and to cause witnesses to appear and testify on matters pertinent to the welfare of the children. The court shall by order fix the fee, including disbursements, for such attorney, which amount shall be taxed as costs and paid by the parties as ordered. *If the court finds that the party responsible is indigent, the court may order the county to pay costs.*

(Emphasis supplied.)

As an initial matter, we note that although the GAL appointed in this case is an attorney, she was appointed as a GAL in the traditional sense of conducting an investigation and reporting to the court, rather than as the court-appointed legal advocate of the children. See *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998) (noting difference between GAL appointed under court's inherent equitable powers and attorney appointed as advocate for minor child). Therefore, we must decide if a GAL appointed by the court under these circumstances can be awarded his or her fees under § 42-358(1).

In 1992, § 42-358(1) was amended to add the last two sentences of the current version of the statute in order to provide courts with statutory authority to award fees to court-appointed attorneys in domestic relations cases. However, it was certainly understood at the time that both attorneys and GAL's were appointed pursuant to the authority of § 42-358(1), even though the section only references an "attorney." See, *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990) (noting § 42-358 provides authority to appoint GAL to protect interests of minor children); *Nye v. Nye*, 213 Neb. 364, 329 N.W.2d 346 (1983) (same); *Ford v. Ford*, 191 Neb. 548, 216 N.W.2d 176 (1974) (noting § 42-358 provides authority to appoint attorney to protect interests of minor children); *Pieck v. Pieck*, 190 Neb. 419, 209 N.W.2d 191 (1973) (same). Moreover, prior to 1992, the practice of awarding fees to both court-appointed GAL's and court-appointed attorneys was well established in domestic relations cases. See, *Nye, supra* (awarding fees to GAL); *Hermance v. Hermance*, 194 Neb. 720, 235 N.W.2d 231 (1975) (awarding fees to counsel appointed to represent minor children). It is, therefore, reasonable to conclude that the 1992 amendment to § 42-358(1) was intended to codify what was, in fact, occurring in practice at that time. In other words, by amending § 42-358(1), the Legislature granted courts statutory authority to award fees to court-appointed counsel, whether the attorney acted as a GAL or as a legal advocate for the minor children in a case.

A review of the legislative history relating to the amendment to § 42-358(1) supports this conclusion. The introducer of the amendment stated that the purpose of the amendment was to codify existing practice while making it clear to reluctant judges that they indeed had the authority to tax the fees of appointees as costs. Floor Debate, L.B. 1255, 92d Leg., 2d Sess. 13159 (Apr. 9, 1992). Moreover, in the statement of intent, and throughout the committee testimony and floor debate, the introducer used the terms "attorneys" and "GAL's" interchangeably when discussing the amendment to § 42-358(1). Statement of Intent, Judiciary Committee, 92d Leg., 2d Sess. (Feb. 13, 1992); Judiciary Committee Hearing, 92d Leg., 2d Sess. (Feb. 21, 1992); Floor Debate, 92d Leg., 2d Sess. 13159-60 (Apr. 9, 1992). The introducer was obviously cognizant of the then

understood interpretation of § 42-358(1), i.e., that it provided authority for courts to appoint attorneys to act as either a GAL or a legal advocate for children in domestic relations cases. The amendment to § 42-358(1) was offered to clarify the power of a court to fix fees in those circumstances.

In sum, our decision in *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998), did not address the question presented here; while the distinction announced in *Betz* properly denotes the duties and obligations of an appointee, it is not relevant for purposes of determining an appointee's entitlement to fees for services rendered. Whether an attorney is appointed as a GAL or as a legal advocate for the children under § 42-358(1), he or she is entitled to collect a reasonable fee under the provisions of § 42-358(1).

The issue in the present case arises, however, because the trial court found both parties to be indigent under § 42-358(1) and ordered Douglas County to pay the GAL fees. Because the statute does not provide the definition of indigency, we must determine when a party is "indigent" for purposes of § 42-358(1). To do so, we turn to the familiar rules of statutory interpretation.

■ Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn., ante* p. 158, 673 N.W.2d 15 (2004). Relevant here, in the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.*

■ Moreover, a court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose. *Brown v. Harbor Fin. Mortgage Corp., ante* p. 218, 673 N.W.2d 35 (2004). In other words, in construing a statute, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place on the statute a reasonable or liberal construction that best achieves the statute's purpose, rather than a construction that defeats the statutory purpose. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999).

Although the term "indigent" is not defined in § 42-358(1), we conclude that it is unambiguous. Therefore, we give the word its plain and ordinary meaning. *Unisys Corp., supra.* Indigent is defined as "[l]acking the means of subsistence; impoverished; needy." The American Heritage Dictionary of the English Language 670 (1969). Similarly, in 7 The Oxford English Dictionary 868 (2d ed. 1989), the following definition of indigent is provided: "Lacking the necessaries of life; in needy circumstances; characterized by poverty; poor, needy."

Other courts that have examined the word indigent in the civil context have come to a similar definition. See, *Savoy v. Savoy*, 433 Pa. Super. 549, 555, 641 A.2d 596, 599-600 (1994), quoting *Verna v. Verna*, 288 Pa. Super. 511, 432 A.2d 630 (1981) (" '[i]ndigent persons are those who do not have sufficient means to pay for their own care and maintenance' "); *Destitute v. Putman Hospital*, 125 Vt. 289, 294, 215 A.2d 134, 138 (1965) ("[i]ndigent, in a general sense, ordinarily indicates one who lacks property or means of a comfortable subsistence, and for that reason is needy or in want"). Further, we note that although the text of § 42-358(1) makes it clear that its underlying purpose is to protect the best interests of minor children through the appointment of attorneys, its secondary purpose is to provide a statutory payment mechanism through which GAL's and attorneys can be appropriately compensated for their work. Statement of Intent, L.B. 1255, Judiciary Committee, 92d Leg., 2d Sess. (Feb. 13, 1992).

With the foregoing in mind, we hold that, for purposes of § 42-358(1), a person is indigent if he or she is unable to pay the GAL or attorney fees without prejudicing, in a meaningful way, his or her financial ability to provide the necessities of life, such as food, clothing, shelter, and medical care for himself or herself or his or her legal dependents. See, e.g., *Jordan v. Jordan*, 983 P.2d 1258, 1263 (Alaska 1999), quoting Alaska Stat. § 18.85.170(4) (Lexis 2002) (indigent person is " 'a person who, at the time need is determined, does not have sufficient assets, credit, or other means to provide payment of an attorney and all other necessary expenses of representation without depriving the party or the party's dependents of food, clothing, or shelter' "); *In re Marriage of Kopp*, 320 N.W.2d 660, 662 (Iowa App. 1982) (indigent "is a person who would be

unable to employ counsel without prejudicing his financial ability to provide economic necessities for himself or his family"). Cf. Neb. Rev. Stat. §§ 29-3901(3) (Reissue 1995) and 83-1008 (Cum. Supp. 2002).

We determine that, as in a criminal case, a finding of indigency under § 42-358(1) is a matter within the initial discretion of the trial court, and such a finding will not be set aside on appeal in the absence of an abuse of discretion by the trial court. See *State v. Richter*, 225 Neb. 837, 408 N.W.2d 717 (1987). The present case is complicated, however, by the fact that neither the trial court nor the parties had the benefit of a working definition of indigency, in the context of a civil case, at the time of the GAL fees hearing. We recognize that the trial court found that Katrina and Mark were indigent when it ordered Douglas County to pay the GAL fees. However, at the fees hearing, Katrina testified that she earned a monthly income of $3,200 ($38,000 annually) and Mark presented evidence that his gross monthly income was $3,500 ($42,000 annually). Under ordinary circumstances, it would appear that both Katrina and Mark have adequate resources to pay the GAL fees without prejudicing, in a meaningful way, their financial ability to provide necessities of life for themselves and their children. Both parties, however, have argued that current obligations, including taxes, debts, and costs associated with health care, along with normal living expenses, have left them with too little disposable income to pay the GAL fees. The record is not adequate for meaningful appellate review on this matter, and in fairness to the parties and the trial court, the litigants were dealing with a standard that had not previously been defined by the Legislature or an appellate court. Therefore, under these circumstances, we cannot determine whether the trial court abused its discretion in its indigency finding, and we remand this matter to the district court for a new indigency determination under the standard set forth herein.

## 2. MARK'S CROSS-APPEAL

### (a) Motion to Disqualify Nebraska Legal Services

On April 12, 2000, Mark filed a motion to show cause why counsel for Katrina, Nebraska Legal Services (hereinafter NLS), should not be forced to withdraw. On May 1, Katrina filed a

motion requesting sanctions against counsel for Mark. Essentially, Katrina argued that Mark's motion to require NLS to withdraw was frivolous and without a rational basis in law. By journal entry, dated May 2, the trial court overruled both motions.

On appeal, Mark argues that the trial court abused its discretion in overruling his motion to require NLS to withdraw. Mark's argument is not entirely clear as to why the trial court's ruling constitutes an abuse of discretion. As best we can determine, Mark is asserting that NLS had a conflict of interest in representing Katrina and that therefore, the trial court was required to order NLS to withdraw. Specifically, Mark appears to argue that Katrina was not indigent and, knowing Katrina's true financial status, NLS conspired with Katrina to allege that Mark committed acts of domestic violence in an effort to provide Katrina with free legal services and to obtain fee recoupment from government sources.

Even if we assume for argument's sake that Mark's factual allegations properly assert a conflict of interest, this assignment is not proper for our review. We have often stated that an appellate action is an inadequate means of presenting attorney conflicts of interest for review. *Centra, Inc. v. Chandler Ins. Co.*, 248 Neb. 844, 540 N.W.2d 318 (1995), citing *State ex rel. Freezer Servs., Inc. v. Mullen*, 235 Neb. 981, 458 N.W.2d 245 (1990). Therefore, we have held that when an appeal from an order denying disqualification of an attorney involves issues collateral to the basic controversy and when an appeal from a judgment dispositive of the entire case would not be likely to protect the client's interests, the party should seek mandamus. See, *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002); *Centra, Inc., supra.*

Here, the disqualification issue is collateral to the basic dissolution controversy, and Mark did not seek a peremptory writ of mandamus to review the trial court's denial of his motion to disqualify NLS. We decline to address his claim now. See, *Trainum, supra; Centra, Inc., supra.*

### (b) Motion to Disqualify GAL

Mark also filed a motion to disqualify the GAL. Essentially, Mark alleged that the GAL should be forced to withdraw because

she was biased in favor of Katrina. The trial court ordered that the GAL be appointed counsel. A hearing was held on the motion, and at the end of the hearing, the motion was overruled. Subsequently, during a hearing on Mark's motion to hold the GAL in contempt, Mark orally requested the court to order the GAL to withdraw. Both motions were overruled. On appeal, Mark argues the trial court erred in overruling his motions to disqualify the GAL.

We have yet to address the appropriate standard to review a trial court's decision to overrule a party's motion to disqualify a GAL. Upon due consideration, we determine that a motion to disqualify a GAL for bias or partiality is similar to a motion to recuse a judge for bias or partiality. Therefore, such a decision is initially entrusted to the discretion of the trial court and we will not disturb that decision absent an abuse of discretion. See *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002) (on appeal, denial of motion to recuse trial judge for bias or partiality will be affirmed absent abuse of discretion). See, also, *Wrightson v. Wrightson*, 266 Ga. 493, 467 S.E.2d 578 (1996) (trial court did not abuse its discretion by failing to disqualify GAL); *State in Interest of Orgill*, 636 P.2d 1075 (Utah 1981) (juvenile court did not abuse its discretion in denying appellant's motion to disqualify GAL).

On appeal, Mark points to certain factors as evidence of bias, including statements by various affiants that they felt the GAL was biased in favor of Katrina, and Mark's own assertion that the GAL ignored evidence presented by a variety of people that was favorable to him.

We have reviewed the relevant evidence and conclude that the trial court did not abuse its discretion in overruling Mark's motion to disqualify the GAL. First, the affidavits upon which Mark relies merely state the affiants' opinions that the GAL seemed to be biased toward Katrina and uninterested in what the affiants had to say. Because the affiants were Mark's sisters and friend, it hardly constitutes an abuse of discretion for the trial court to attach appropriate weight to their opinions of bias. Moreover, Mark's assertion that the GAL ignored evidence favorable to his case is just that—an assertion. There is no evidence that the GAL purposely ignored evidence favorable to Mark's case.

Mark also asserted that the GAL's failure to submit a report at the time established by the court and the GAL's failure to report Katrina's conviction for driving under the influence (DUI) to the court were also evidence of bias. But after reviewing the relevant evidence, we conclude that the trial court did not abuse its discretion in overruling Mark's motion to disqualify the GAL. The GAL learned of the DUI because of Katrina's self-reporting, and the GAL then independently investigated the circumstances, including where the children were at the time of the event, and requested a chemical dependency evaluation of Katrina. There is no evidence that the GAL's omission of the DUI was done for any nefarious purpose or the hiding of evidence that was available to both parties. Likewise, Mark has pointed to no evidence which supports his contention that the GAL report was submitted late to prejudice his case and Mark did not assign as error the trial court's decision to overrule his motion to quash the report. This entire assignment of error is without merit.

(c) Custody of Children

In its final decree, the trial court determined that Katrina was a fit and proper person to be awarded custody of the children and that it would be in the children's best interests to be in the care, custody, and control of Katrina. On appeal, Mark argues that the court abused its discretion in awarding custody of the children to Katrina.

A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998). Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give great weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Id.* See, also, Neb. Rev. Stat. § 42-364 (Reissue 1998); *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990); *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688 (1990). The record

demonstrates that Katrina and Mark are both fit parents. Therefore, the best interests of the minor children must determine this issue.

In determining a child's best interests in custody matters, courts may consider many factors, including:

"[G]eneral considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child."

*Ritter v. Ritter*, 234 Neb. 203, 211-12, 450 N.W.2d 204, 211 (1990), quoting *Christen v. Christen*, 228 Neb. 268, 422 N.W.2d 92 (1988). See, also, § 42-364(2).

In our de novo review, we conclude that the evidence supports the trial court's finding that the best interests of the children would be served by awarding custody to Katrina. Like the trial court, we give substantial weight to the evidence set forth by an evaluating psychiatrist and the GAL in the instant case. While the GAL determined that both parties were fit parents, the GAL noted that Katrina was better able to nurture and care for the children. This evidence was based on interviews with each member of the family and observation of the children at their home. As to Mark, the GAL expressed concerns that Mark was controlling and obsessive and that his behavior, among other things, hindered an ongoing, productive relationship between the children and Katrina.

In addition, during the course of the separation and prior to trial, both Katrina and Mark were evaluated by the same psychiatrist. In order to respect the privacy of both individuals, we will set forth only a summary description of the psychiatric evaluations—even though we considered the details of the evaluations in our de novo

review. The psychiatrist determined that Katrina had no current psychiatric disorder and noted that Katrina has the capacity to have a warm, positive relationship with her children and to place appropriate expectations on the children. On the basis of information obtained by clinical interviews of Katrina and Mark, as well as review of historical records, the psychiatrist concluded that Mark engaged in psychologically controlling behaviors and harassment, even though those behaviors might have in part been due to an underlying mental health disorder that may respond positively to treatment. In performing his evaluation, however, the psychiatrist found that Mark had a positive interest in his children, even though he had a strong need to be in control. Regarding custody of the children, the psychiatrist opined that the children's best interests would be served by being placed with Katrina.

On appeal, Mark argues that his psychiatric evaluation contains conclusions based upon guess and speculation and does not state an opinion to a reasonable degree of medical certainty. Therefore, Mark argues, the evaluation should not have been relied on by the trial court in making its custody determination. Mark, however, failed to object to the substance and basis of the evaluation during the hearing in which it was offered and received in evidence. Instead, Mark objected to the evaluations on the sole ground that they were incomplete, i.e., they did not contain all of the information he had requested through discovery. By failing to properly object, Mark has waived his right to assert prejudicial error on appeal. See, Neb. Rev. Stat. § 27-103 (Reissue 1995); *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003).

Mark also argues that the findings and recommendations of the GAL should be discounted or ignored because the GAL was biased in favor of Katrina. We have already determined that Mark's allegations of bias are without merit.

In sum, given our de novo review of the record and taking into consideration the best interests of the children, we cannot say that the trial court abused its discretion by granting custody of the children to Katrina.

### (d) Child Support Calculation

In its decree, the trial court ordered Mark to pay $1,142.56 per month in child support for the four children. In addition,

Mark was ordered to pay any and all unpaid child support stemming from the court's temporary order of March 10, 2000. On appeal, Mark makes a number of assertions as to why the trial court erred in its child support calculation.

First, Mark argues that the trial court erred by not retroactively reducing his child support obligations—stemming from the court's temporary order of March 10, 2000—to reflect the significant amount of time that he had physical custody of the children in the period between the March 10 order and the June 11, 2002, decree. In support of his argument, Mark relies upon the September 2002 amended version of paragraph J of the Nebraska Child Support Guidelines. Paragraph J states, in relevant part: "An adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period."

However, the current version of paragraph J, stated above, came into effect after the June 11, 2002, decree. The guideline in effect at the time of both the temporary order and the decree stated: "An adjustment in child support may be made at the discretion of the court when visitation substantially exceeds alternating weekends and holidays and 4 weeks in the summer." In other words, under the applicable version of paragraph J, the amount of "parenting time" was not a factor the trial court could use in determining whether to make an adjustment in child support.

The applicable version of the guidelines permitted an adjustment only when the *visitation* schedule deviated from the typical noncustodial visitation. In his brief before this court, Mark admits that his "non-custodial visitation rights establish a standard non-custodial parent schedule." Brief for cross-appellant at 24. In sum, although Mark produced several graphs and charts which purportedly demonstrate that he cared for the children nearly half of the time during 2000 and 2001, the guidelines in effect at that time only referenced visitation time and left any adjustment in child support up to the discretion of the court. On appeal, we see no reason to disturb the trial court's order.

Second, Mark argues that the record shows that he had exercised visitation equivalent to joint custody of the children between the March 10, 2000, temporary order and the June 11,

2002, decree. Therefore, according to Mark, the trial court erred by using the sole custody worksheet instead of the joint custody worksheet to calculate child support.

■ Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Gallner v. Hoffman*, 264 Neb. 995, 653 N.W.2d 838 (2002). For purposes of establishing child support, whether Mark exercised visitation roughly equivalent to joint custody would be relevant only if he shared joint physical custody of the children with Katrina. See, *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001); *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999). Here, Katrina was granted sole custody of the children in both the temporary order and the final decree, subject only to reasonable visitation by Mark. Because Katrina was granted sole custody of the children, it was proper for the trial court to use worksheet 1.

Third, Mark argues that the trial court erred by not fully completing the child support calculation worksheet. In its decree, the court based its order of child support on exhibit 26, Katrina's child support calculation. As Mark notes, the worksheet does not provide an estimate of Katrina's gross monthly income or the applicable deductions. The worksheet does, however, state Katrina's net monthly income and provides a calculation of child support therefrom. In addition, attached to the worksheet is a copy of federal income tax form 8453, which states Katrina's gross income in 2000. Exhibit 26, in its entirety, provides an adequate basis from which to perform a child support calculation.

We have also fully considered Mark's remaining complaints regarding the trial court's calculation of child support and find each of the complaints to be without merit.

### (e) Division of Marital Debt

In its decree, the trial court determined that the marital debt of the parties, absent any indebtedness on vehicles, was $24,858. The court ordered each party to pay $12,429 of the debts. The court went on to give Katrina a credit of $7,250 for the amount of unpaid daycare that Mark owed to her. Similarly, the court gave Mark a credit of $9,968 for the amount of marital debt that he had paid prior to trial.

Mark argues that the court erred by relying on Katrina's statement of the marital debt found in exhibit 25. According to Mark, exhibit 25 lacked foundation and should have been disregarded in favor of his testimony concerning the marital debt. Although Mark objected to Katrina's testimony which referenced exhibit 25, Mark failed to object to exhibit 25 when it was received in evidence, and his argument is without merit. Essentially, Mark is left to argue that the trial court should have credited his testimony instead of Katrina's statement of marital debt contained in exhibit 25. However, when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003). We do so here and conclude that the trial court did not abuse its discretion by choosing to rely on Katrina's statement of marital debt rather than Mark's in dividing the marital debts.

Mark also argues that the court erred by failing to account for $20,000 that he testified to borrowing from his family. Under Neb. Rev. Stat. § 42-365 (Reissue 1998), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002); *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

Mark testified that he borrowed $20,000 from his family because he has been "financially devastated by this process." As evidence of his devastation, Mark points to exhibit 33 which cataloged his average monthly living expenses. Such evidence, however, does not establish that the loan was marital debt. Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. Cf. *Tyma*, 263 Neb. at 877, 644 N.W.2d at 144 ("[t]he marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties"). While these proceedings have no doubt adversely affected Mark's financial circumstances, the

loan from his family was taken out after his separation with Katrina and is not properly recognized as marital debt.

### (f) Attorney Fees

On appeal, Mark claims that the trial court erred in ordering him to pay his own attorney fees. In an action for dissolution of marriage, the award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Medlock v. Medlock*, 263 Neb. 666, 642 N.W.2d 113 (2002). Mark argues that Katrina should be ordered to pay his attorney fees because Katrina's allegation of domestic violence was frivolous. In actuality, the trial court found that "while the actions of [Mark] might have been controlling in nature," the evidence did not support a finding that Katrina was subjected to "domestic violence" by Mark. This finding is not tantamount to a determination that a claim is frivolous, and the trial court did not abuse its discretion in ordering Mark to pay his own attorney fees under the circumstances.

## VI. CONCLUSION

For the foregoing reasons, we conclude that Mark's assignments of error on cross-appeal are without merit, the district court did not abuse its discretion in overruling his motion for new trial, and the court's divorce decree is affirmed in all respects. We, however, vacate that portion of the July 26, 2002, judgment of the district court which ordered Douglas County to pay the GAL fees, and remand this cause to the district court for the limited purpose of (1) making a new indigency determination based on the standard announced herein and (2) entering an order regarding the payment of the GAL fees pursuant to § 42-358(1).

AFFIRMED IN PART, AND IN PART
VACATED AND REMANDED.