IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

FOCHTMAN V. FOCHTMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHERRY M. FOCHTMAN, APPELLEE AND CROSS-APPELLANT,

V.

RANDY R. FOCHTMAN, APPELLANT AND CROSS-APPELLEE.

Filed January 5, 2016.    No. A-14-1002.

Appeal from the District Court for Hamilton County: RACHEL A. DAUGHERTY, Judge. Affirmed in part, and in part reversed and remanded with directions.

John B. McDermott and Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.

Scott D. Grafton, of Grafton Law Office, P.C., for appellee.

MOORE, Chief Judge, and IRWIN and INBODY, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Randy R. Fochtman appeals and Sherry M. Fochtman cross-appeals from a decree of the district court for Hamilton County, which decree dissolved the parties' marriage, distributed the marital estate, and awarded Sherry alimony. On appeal, Randy challenges the court's decision to exclude from the marital estate $8,600 Sherry withdrew 11 months before the couple's separation and which he claims Sherry used to purchase real estate with her adult daughter. Randy also challenges the court's inclusion of Sherry's post-separation medical and dental bills as marital debt and its award of alimony. On cross-appeal, Sherry challenges the court's exclusion from the marital estate of money Randy inherited and used to pay off a debt on the couple's home. Upon

- 1 -

our review of the record, we conclude the district court abused its discretion by including as marital debt the bills Sherry incurred after the parties separated; however, we affirm in all other respects.

## II. BACKGROUND

Sherry and Randy were married in 2004. There were no children born of the marriage. On August 28, 2013, Randy filed a complaint seeking dissolution of the marriage and an equitable division of the marital property and debts.

On June 26, 2014, trial was held. At the trial, Randy testified regarding his income and work history. He testified that he was employed as a truck driver for Fochtman Trucking, L.L.C. According to his tax returns, Randy's income was $65,239 in 2012 and $81,190 in 2013.

In addition to the information regarding his salary, Randy testified that in January 2012, he inherited $52,000 from the sale of his parents' land. Bank records introduced into evidence indicated Randy deposited the $52,000 into a checking account he shared with Sherry at Pinnacle Bank on January 17. The same day Randy deposited the $52,000, the couple paid off $11,611.28 that was remaining on a loan from Pinnacle Bank. Randy testified this loan had been used for a down payment on a house he and Sherry purchased together. To finance this loan, the couple had used as collateral a camper Sherry owned prior to the marriage. Randy testified that the $11,611.28 loan payment came from the $52,000 he had inherited.

Finally, Randy presented evidence that Sherry withdrew money from the couple's joint bank account in August 2012. Bank statements from the joint account showed that Sherry transferred the following amounts from the couple's joint account to her personal account: $2,600 on August 18, $5,000 on August 24, and $1,000 on August 28. Randy testified that while he was not sure where this $8,600 went, he believed Sherry had used the money to purchase real estate with JoBeth Swallow, her daughter from a prior relationship. To support his claim that Sherry had helped Swallow buy a house, Randy produced a joint tenancy warranty deed for a property in Sheridan County. The deed conveyed the property "to JoBeth Swallow and Sherry Fochtman, Grantees, as joint tenants." The deed was executed on September 22 and received by the county clerk on October 17.

Sherry also testified at the trial. With respect to her income, Sherry testified that she was earning $800 a month caring for an elderly man at the time of the trial. Sherry also testified that when she and Randy met nearly ten years earlier, she was making approximately $130,000 a year, but that her financial condition had declined during the marriage. According to Sherry, her income had decreased during the marriage due to her deteriorating health. Sherry testified that she suffered from fibromyalgia and was no longer able to work full time or use her hands.

Related to her medical problems, Sherry testified she had been referred to the Mayo Clinic by her treating physician. Sherry was treated at the Mayo Clinic in January 2014. An itemized billing statement from the Mayo Clinic showed total charges of $11,462.86 for services Sherry received between January 6 and January 9. Sherry also adduced evidence that she had incurred dental costs totaling $4,367 on October 30, 2013.

During her testimony, Sherry disputed Randy's version of events surrounding the money she withdrew from the couple's joint account in August 2012. According to Sherry, she later used this $8,600 for her business. Sherry maintained she did not help her daughter pay for the property

in Sheridan County. Sherry testified that her name appeared on the deed alongside her daughter's, but that she did not purchase the property.

In support of her claim that she did not purchase any real estate with marital funds, Sherry called her daughter, JoBeth Swallow, to the stand. According to Swallow, Sherry did not contribute any funds to buy the property in Sheridan County. Swallow testified that she had her mother serve as her joint tenant "because if something ever happens to me, I want the house to go to somebody." Swallow further testified that she was currently living with her fiancé while Sherry was living in the house in Sheridan County. According to Swallow, Sherry paid rent while Swallow continued to make the mortgage payments on the property.

On August 11, 2014, the district court entered a decree of dissolution. In the decree, the court divided the couple's property. Relevant to the appeal, the court set aside $11,611.28 to Randy as nonmarital funds. This set aside corresponded to the amount of money Randy had inherited and used to pay off the Pinnacle Bank loan. The court also declined to place any marital value on the property in Sheridan County because "there was no direct evidence that marital funds were utilized to purchase the home." The court stated it "accept[ed] the testimony of Ms. Swallow that the home was paid for by her alone."

In the decree, the district court also addressed the debts Sherry incurred in October 2013 and January 2014. The court first noted that both the Mayo Clinic and dental charges were incurred after the parties had separated. Nevertheless, the trial court stated that "Randy acknowledged in his testimony that Sherry had health issues" prior to the divorce. The court concluded, "[T]hese debts are necessaries and as such both parties are liable despite the fact they were incurred within a few months post-separation."

Finally, the court ordered Randy to pay alimony to Sherry in the amount of $2,000 per month for 48 months. In ordering alimony, the court noted that Randy earned $65,239 in 2012 and $81,190 in 2013 while Sherry received $800 in income per month at the time of the trial. In support of its determination that alimony was appropriate, the court indicated it had considered the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2008). Additionally, the court noted that "Sherry's earning capacity has greatly decreased due to her medical issues while Randy's earning capacity has increased." The court therefore determined an award of alimony was reasonable.

After the decree was entered, Randy filed a motion for new trial. In the motion, Randy alleged, among other things, that the district court failed to include marital property that Sherry had dissipated, that the court should not have included nonmarital debts in the estate, and that the award of alimony was excessive in both amount and duration. On October 9, 2014, the court overruled Randy's motion for a new trial.

This appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, Randy assigns three errors. First, he asserts that the district court erred in failing to include as a marital asset the $8,600 Sherry withdrew from the couple's joint account and that Randy claims Sherry used to purchase a house with her daughter. Second, he claims that the court erred when it included Sherry's post-separation medical and dental bills as marital debt. Third, Randy asserts that the court erred in awarding Sherry alimony in the amount of $2,000 per month for 48 months.

- 3 -

On cross-appeal, Sherry asserts that the district court erred in excluding the $11,611.28 from the marital estate that Randy inherited and used to pay off the couple's Pinnacle Bank loan.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013). A judicial abuse of discretion exists when the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015).

### 2. RANDY'S APPEAL

#### (a) Exclusion of $8,600

Randy first challenges the district court's decision not to credit him for the $8,600 Sherry withdrew from the couple's joint account. Randy claims Sherry did not disprove that she used this money to purchase a property in Sheridan County with her daughter. He asserts the district court should have presumed Sherry purchased the property with marital funds because she transferred the money soon before the property was conveyed to Sherry and Swallow. We find no abuse of discretion upon our de novo review.

In an action for dissolution of marriage, Neb. Rev. Stat. § 42-365 authorizes a trial court to equitably distribute a marital estate in accordance with what is fair and reasonable under the circumstances. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012). The equitable division of property is a three-step process. *Despain*, *supra*. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought it to the marriage. *Id.* The second step is to value the marital assets and liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties. *Id.* The burden of proof to show that property is nonmarital is on the person making the claim. *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002).

Upon conducting its de novo review of a dissolution case, an appellate court may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts over another. See *Walker v. Walker*, 9 Neb. App. 694, 618 N.W.2d 465 (2000).

In this case, Sherry testified that the three transfers she made from the couple's joint account to her separate account in August 2012 were not to purchase the property in Sheridan County. Rather, she testified she later spent the money on the business she operated at the time. Swallow, Sherry's daughter, corroborated Sherry's version of events by testifying she alone purchased the house in Sheridan County.

Randy presented no evidence to contradict Sherry and Swallow's testimony that no marital funds were used to purchase the Sheridan County property. Rather, Randy speculated that Sherry must have spent the money on the property because the deed was executed one month after Sherry transferred the $8,600.

After considering the testimony and evidence, the district court expressly accepted Swallow's version of the facts. The court therefore declined to place marital value on the Sheridan

- 4 -

County property or to credit Randy the $8,600 he claimed Sherry used to buy it. We give weight to the fact that the trial court heard Swallow's testimony and found it to be credible. See *Walker*, *supra*. Sherry provided evidence that she did not use marital funds to buy the property with her daughter and Randy did not provide evidence to the contrary. We cannot say the district court abused its discretion in excluding the $8,600 and the Sheridan County property from the marital estate. Randy's assignment of error to the contrary is without merit.

(b) Post-Separation Debt

Randy next challenges the district court's inclusion of Sherry's post-separation medical and dental bills in the marital estate. Upon our de novo review of the record, we agree the district court abused its discretion in including as marital debts the medical and dental expenses Sherry incurred after the parties were separated.

Marital debt includes only those obligations incurred during the marriage and before the date of separation for the joint benefit of the parties. *McGuire*, *supra*; see, also, *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006).

Nebraska courts have declined to include obligations incurred after the parties have separated in the marital estate, even where the expenses are arguably necessary. For example, in *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004), the Nebraska Supreme Court determined the trial court had properly excluded from marital debt $20,000 that the husband had borrowed from his family after he had separated from his wife. The husband, Mark, testified that he had to borrow the money because the divorce had "financially devastated" him. *Id.* at 621, 676 N.W.2d at 58. The Supreme Court nevertheless declined to include the loan as marital debt, stating, "While these proceedings have no doubt adversely affected Mark's financial circumstances, the loan from his family was taken out after his separation . . . and is not properly recognized as marital debt." *Id.* at 621-22; 676 N.W.2d at 58; see, also, *Finley-Swanson v. Swanson*, 20 Neb. App. 316, 823 N.W.2d 697 (2012) (affirming the trial court's exclusion from the marital estate of the parties' attorney fees incurred during the dissolution proceedings because the expenses occurred after the wife had filed for dissolution of marriage and were not for the parties' joint benefit).

In the present case, the parties separated in July 2013 and Randy filed for dissolution on August 28. On October 30, Sherry incurred $4,367 in dental bills. Between January 6 and 9, 2014, Sherry incurred $11,462.86 in medical bills at the Mayo Clinic. The district court acknowledged that the medical and dental charges occurred after the parties had separated, but determined both parties should be liable for them because Randy knew Sherry had health issues and the debts were "necessaries."

Sherry's dental and medical debts occurred three and six months, respectively, after she and Randy were separated. Like the loan for living expenses in *Mathews*, Sherry's medical expenses may well have been necessary, but this alone does not qualify them as marital debts. Cf. *Mathews*, *supra*. The medical bills were incurred after the date of separation and solely for Sherry's benefit. The court abused its discretion when it included the bills in the marital estate. Accordingly, we reverse the decree and remand with directions for the district court to recalculate the division of the parties' property without including Sherry's post-separation medical and dental bills as marital debt.

## (c) Alimony

Third, Randy challenges the court's order requiring him to pay Sherry $2,000 a month for 48 months in alimony. Randy argues there was no competent evidence that Sherry was incapable of working. According to Randy, the award of alimony is untenable because "Randy is not responsible for the current situation in which Sherry finds herself." Upon our de novo review, we find no merit to this assigned error.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004). In particular, § 42-365 provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

In addition to the criteria listed in § 42-365, a trial court determining alimony should consider the income and earning capacity of each party and the general equities of the situation. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

In reviewing an award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004). The ultimate criterion in assessing an alimony award is reasonableness. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

In the decree of dissolution, the district court acknowledged the various factors relevant to alimony determinations set forth in § 42-365. In addition to the statutory factors, the court noted that Randy earned $65,239 in 2012 and $81,190 in 2013 and Sherry made only $800 a month. With respect to this disparity in the parties' incomes, the court apparently credited Sherry's testimony that her health problems prevented her from earning more. The court also recognized the parties had been married for approximately 10 years, during which time Sherry's earning capacity greatly decreased and Randy's earning capacity increased. The court therefore concluded that an award of alimony was reasonable and fair.

On our de novo review of the record, we do not find the district court's alimony award to be an abuse of discretion. The award of $2,000 per month for 48 months does not deprive Randy of a substantial right or a just result and is reasonable in light of the factors considered by the trial court. Randy's assignment of error in this regard is without merit.

### 3. SHERRY'S CROSS-APPEAL

Sherry challenges the district court's exclusion from the marital estate of the $11,611.28 that Randy inherited and used to pay off the Pinnacle Bank loan. Sherry argues Randy "benefitted by way of owing less on the marital residence" when he used the inherited funds to pay off the loan. Brief for appellee on cross-appeal at 18. She argues the district court should have classified

only one-half of the $11,611.28 as nonmarital property "as only one-half of the payment did not benefit Randy." *Id.* We find no merit to this assertion.

As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). One such exception is property accumulated and acquired through inheritance. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). If the inheritance can be identified, it is to be set off to the inheriting spouse and eliminated from the marital estate. *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003).

In the present case, Sherry does not challenge the district court's determination that the $11,611.28 is traceable to Randy's inheritance. Rather, she argues that because Randy used the inherited money to pay a marital debt, only one-half of the amount should be eliminated from the marital estate. This argument is unpersuasive. The use to which Randy put the money does not change the fact that the funds were inherited. Had Randy spent the $11,611.28 to purchase a personal item, the full amount would have been set off to him as inherited funds. The fact Randy used the money to pay off a joint debt does not change the nature of the money; the $11,611.28 remained Randy's separate inheritance. The district court did not abuse its discretion when it set off to Randy the $11,611.28 of inherited funds.

## V. CONCLUSION

Upon our review, we find that the district court abused its discretion in including Sherry's $8,600 post-separation debt in the marital estate. We reverse and remand with directions for the district court to recalculate the division of the parties' property without including Sherry's medical bill from October 2013 and dental bill from January 2014. We affirm the decree of dissolution in all other respects.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.