TAJUDDIN MILLATMAL, APPELLANT, V.
PARVEEN MILLATMAL, APPELLEE.
723 N.W.2d 79

Filed October 27, 2006.   No. S-05-237.

Kelly T. Shattuck, of Cohen, Vacanti, Higgins & Shattuck, for appellant.

Brian Zdan for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. INTRODUCTION

On January 24, 2005, the district court for Douglas County entered a decree dissolving the marriage of Tajuddin Millatmal (Taj) and Parveen Millatmal. Taj appealed. We moved this case to our docket pursuant to our authority to regulate the dockets of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. BACKGROUND

Taj and Parveen were married in Pakistan in 1984 and have lived in the U.S. for 13 years. Taj and Parveen, as well as their two daughters, Nelam and Naheed, are U.S. citizens. Nelam was born June 25, 1985, and was married via an arranged marriage in Pakistan in late 2002. She currently resides in Omaha, Nebraska, with her husband. Naheed was born November 18, 1986, and in the summer of 2002 was also married via an arranged marriage in Pakistan. Naheed resides in Omaha with Parveen and attends school. Naheed's husband still lives in Pakistan. According to the record, there are currently no divorce actions pending in either the United States or Pakistan with respect to these marriages.

Parveen has been employed as a seamstress for almost 13 years and, at the time of trial, earned $8.25 per hour. Parveen also rents out rooms in the family home, earning approximately $550

per month. In addition, it is apparently customary in Pakistan that working children living at home give part or all of their salaries to their parents. Accordingly, Parveen also receives between $600 and $1,000 per month from Naheed, who, in addition to being a student, has several part-time jobs.

Taj is employed as a telephone interpreter and as a cabdriver. According to Taj, he earns $700 per month as a cabdriver and another $300 per month as an interpreter, for a total income of $1,000 per month. Taj also testified that he volunteers at a nonprofit organization about 20 hours per week.

The parties own a home in Omaha valued by the Douglas County assessor at $159,000. Parveen testified that she believed the property to be worth no more than $180,000, while Taj testified that he believed the property to be worth $220,000. The record indicated that between $101,000 and $109,000 remained unpaid on the mortgage.

There was evidence presented as to certain debts owed by the parties. Parveen testified that at Taj's direction, while in Pakistan preparing for her daughters' weddings, she borrowed $25,000 from her family in order to pay living and wedding expenses. According to Parveen, taking such a loan was necessary because while traveling, Taj had misplaced a briefcase containing cash that was to be used by Parveen to cover those expenses. Parveen testified that there was no contract for repayment because the loan was from family. Taj testified that he did not direct Parveen to borrow the money. He also acknowledged that he had lost a briefcase containing $10,000, but that such event occurred subsequently to the time period referred to by Parveen, and that in any event, he had been acting as a courier, so not all of that money belonged to him and Parveen. In addition, Taj testified that he borrowed a total of $18,907 from friends in order to cover various household expenses.

The couple also owned several vehicles and various personal effects. According to Parveen, the couple owned a 1995 Ford Windstar minivan and a 1990 Toyota Corolla. In addition, since the couple separated, Taj had purchased a 2004 Honda Civic. Both parties testified, however, that the minivan had been sold, though it is not clear from the record when that sale took place. Taj testified that the Toyota was paid for.

At trial, there appeared to be little dispute over the division of personal effects, with the exception of certain items which Parveen testified were part of her dowry, including jewelry, valued at $30,000, and seven rugs, valued at $2,000 to $3,000 each. Parveen alleged that Taj had taken those items, as well as all household items except the furniture, while she was still in Pakistan following the weddings. Taj denied this and testified that when he left the marital home, he took only his clothes, a bed, and a computer desk.

The district court entered its decree on January 24, 2005. In relevant part, that decree concluded that Naheed was not emancipated and accordingly awarded custody of Naheed to Parveen. Taj was ordered to pay $60 per month in child support. The district court's decree placed an equity value of $72,000 on the parties' home and awarded that home to Parveen. In addition, the district court found that the debts owed by Taj were not marital debts, but that the $25,000 which Parveen testified was owed to her family was a joint marital debt. The court ordered Parveen to pay to Taj a total of $23,500, which was Taj's 50-percent interest in the home equity less his 50-percent liability in the marital debt. This amount was to be paid upon the sale of the property or in 5 years, whichever occurred first. The parties were awarded the personal property in their possession. In addition, Taj was awarded several other items if those items could be recovered from the parties' marital home. Parveen was additionally awarded, as nonmarital property, the rugs and jewelry that were part of her dowry, should those items be recovered. Taj was awarded the Honda, and Parveen was awarded the Ford, if the latter vehicle was still in the possession of either party. There was no explicit disposition made by the district court of the Toyota. Finally, Taj was ordered to pay spousal support to Parveen in the amount of $300 per month for 48 months or until Parveen's death or remarriage.

### III. ASSIGNMENTS OF ERROR

On appeal, Taj assigns that the district court erred in (1) awarding child support for a child who was married at the time of the entry of the order, (2) awarding alimony, and (3) its division of the marital estate.

## IV. STANDARD OF REVIEW

■ An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

## V. ANALYSIS

### 1. CHILD SUPPORT

In his first assignment of error, Taj argues that the district court erred in its award of child support. Taj contends that the record is undisputed Naheed was married at the time of the entry of the decree and that pursuant to Neb. Rev. Stat. § 42-371.01(1)(b) (Reissue 2004), he had no obligation to pay child support. That section provides in relevant part that "[a]n obligor's duty to pay child support for a child terminates when . . . the child marries . . . ."

In support of his argument, Taj directs us to Neb. Rev. Stat. § 42-117 (Reissue 2004), which provides that "[a]ll marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, shall be valid in all courts and places in this state." See, also, *Randall v. Randall*, 216 Neb. 541, 545, 345 N.W.2d 319, 321 (1984) ("validity of a marriage is generally determined by the law of the place where it was contracted"). There is no indication from the record that the marriage was invalid under Pakistani law. Thus, under the plain language of § 42-117, we must deem Naheed's marriage valid in Nebraska.

Although Parveen's brief claims that in a marriage where consent was obtained by force or fraud, the marriage is voidable, the record does not reflect that either Naheed or Parveen have taken any steps to void this marriage. Thus, the marriage is not, for purposes of our analysis, void.

Given that Naheed's Pakistani marriage is considered valid in Nebraska, we conclude that Naheed is emancipated. As a result of her emancipation, the district court abused its discretion in ordering Taj to pay child support to Parveen. Accordingly, we vacate the district court's award of child support.

## 2. ALIMONY

In his second assignment of error, Taj argues that the district court ·erred in awarding alimony that was excessive in both amount and duration. Taj argues that he simply cannot afford to pay an alimony award and, further, that the record indicates that Parveen's financial situation is such that she does ·not require spousal support. Parveen asserts that the amount and duration were reasonable, as the payments would allow her to obtain further education.

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id.* The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.*

In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Id.*; Neb. Rev. Stat. § 42-365 (Reissue 2004). In addition to. the specific criteria listed in § 42-365, a court is to consider the income and earning capacity of each party, as well as the general equities of each situation. See *Ainslie v. Ainslie*, 249 Neb. 656, 545 N.W.2d 90 (1996).

The parties were married for 20 years. From the record, it appears that for at least part of that time, Parveen worked to support the family. In addition, Parveen quit her job to move with the parties' daughters to Pakistan in order to plan and attend the daughters' weddings. Upon her return to the United States, she was able to regain the same employment, but at a lower wage. A review of the record indicates that Parveen receives about $2,570 per month, from all sources of income. The record

further indicates that prior to trial, Parveen had monthly expenses of about $1,460; however, that does not include any mortgage payments, for which she is responsible under the terms of the decree. According to the record, Parveen has expressed an interest in obtaining further education in computer programming.

With respect to Taj, the record shows that he earns about $1,000 per month and apparently runs a monthly deficit of about $400. However, Taj currently holds both a medical degree and a master's degree in public administration and, within the last few years, earned as much as $1,500 per month. Taj has expressed interest in obtaining further education in nursing.

The record would support a finding that Parveen has made certain sacrifices for the family. Moreover, Taj's earning capacity exceeds the income he now makes as a cabdriver and part-time interpreter. Alimony would allow Parveen the opportunity to obtain higher education and a higher-paying job. We will affirm a trial court's award of alimony unless it is so untenable as to deprive a party of a substantial right or just result. We cannot conclude that the award in this case meets this standard. Accordingly, we conclude that the district court's award of alimony was not an abuse of discretion.

### 3. PROPERTY DIVISION

In his third assignment of error, Taj argues that the district court erred in its division of the marital estate. Specifically, he asserts that the court erred (1) in its findings regarding marital and nonmarital debt, (2) in its valuation of the marital home, (3) in allowing Parveen 5 years in which to pay Taj his portion of the equity value of the marital home, (4) by not including in the division of property the parties' Toyota, and (5) in not making an itemized list of the marital property, valuing those items, and then dividing those assets as provided by statute.

Under § 42-365, the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). Although the division of property is not subject to a precise mathematical

formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

### (a) Division of Marital Debt

Taj first contends that the district court erred in concluding that the $25,000 debt to Parveen's family was a marital debt and also in concluding that certain debts incurred by Taj were nonmarital.

With respect to the $25,000 debt to her family, at trial, Parveen testified that she had borrowed the funds in question from her family in Pakistan and that the debt was incurred to pay living and wedding expenses while she and the parties' daughters were living in Pakistan. Parveen acknowledges that there were no written terms or contract, as the loan was a "matter of trust." Given this lack of documentation, Taj asserts that Parveen did not meet her burden to show that the debt actually existed.

Taj additionally argues that he incurred certain marital debts which the district court erroneously concluded were business debts and thus nonmarital. Taj testified regarding these debts, including their character as marital, and additionally provided canceled checks regarding these debts. Parveen, however, testified that she knew the persons allegedly loaning money to Taj and that for various reasons, she believed those loans to be fraudulent. Parveen specifically testified that at least one of the persons that Taj claimed loaned him money was a business associate of Taj's.

Taj's arguments on these points are without merit. Marital debt includes only those obligations incurred during the marriage for the joint benefit of the parties. *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004). The burden to show that a debt is nonmarital is on the party making that assertion. Cf. *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999) (burden of proof to show that *property* is nonmarital remains with person making that assertion). See, also, *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002) (burden of proof to show that debt is nonmarital remains with person making that assertion).

Taj testified that he did not believe that the debt allegedly incurred by Parveen was a marital debt, but that he "couldn't [get] a straight forward answer" from Parveen's family with respect to the debt. We do not read this testimony as directly contradicting

Parveen's testimony that she incurred the debt during the marriage for the joint benefit of the parties. To the extent that it could be read in such a manner, the district court was entitled to accept as true Parveen's testimony that the debt existed. When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Mathews v. Mathews, supra.*

Taj has failed to meet his burden to show that this debt was nonmarital. We therefore conclude that the district court did not abuse its discretion in finding this debt to be a marital debt.

With regard to Taj's debts, we similarly cannot conclude that the district court abused its discretion in concluding that the debts were nonmarital. While Taj did testify to the existence of the debt, Parveen also testified that she believed the debts to be false. Again, the district court was entitled to accept as true one set of facts over another.

We conclude that Taj's arguments regarding the determinations of marital and nonmarital debt are without merit.

### (b) Valuation and Award of Marital Home

Taj also asserts that the district court erred in finding that the marital home had an equity value of $72,000 and further in permitting Parveen 5 years to pay Taj his half of that value. Taj's assertions are without merit.

With respect to the district court's valuation, Parveen testified that she valued the property at $180,000 and further estimated that the total remaining mortgage on the property was between $101,000 and $109,000, leaving an equity value of between $71,000 and $79,000. Thus, the record supports the district court's equity valuation of $72,000. We cannot conclude the district court abused its discretion in its valuation.

Taj also argues that the district court erred in allowing Parveen 5 years to pay him his share of the equity value of the home. To support his contention, Taj points to his dire financial situation, as compared to Parveen's. However, our review of the record clearly indicates that Parveen is not able to finance the lump sum of $23,500 necessary to immediately pay Taj his equity share of the home. Again, under these circumstances, we cannot conclude that the district court abused its discretion in

allowing Parveen 5 years to pay Taj his portion of the equity value of the marital home.

### (c) Failure to Specifically Value and Divide Marital Property

Finally, Taj argues that the district court erred by not first valuing the assets and liabilities of the marital estate and then dividing the marital estate in accordance with the principles stated in § 42-365. In connection with this argument, Taj notes that the district court failed to dispose of the Toyota owned by the parties.

We first address Taj's contention that the district court failed to dispose of the Toyota. We agree with Taj that no explicit disposition of the Toyota was made in the decree. However, the decree did award to each party the property currently in his and her possession, and Taj's undisputed testimony was that the Toyota was in Parveen's possession. While we agree that it might have been simpler for the district court to have explicitly awarded the Toyota to Parveen, we conclude that such an award is implicit in the court's decree.

With regard to the district court's property division, the record reveals the following: Parveen was awarded the marital home, valued at $180,000, subject to a $108,000 mortgage. As noted above, we can also discern from the decree that she was awarded the Toyota, valued at $1,500. Taj was awarded the Honda Civic, valued at $17,000, subject to a $16,500 encumbrance. The parties were each assessed $12,500 in marital debt. The district court equalized the estate by awarding Taj one-half the equity in the home, totaling $36,000. Without including any personal property in the estate, the marital estate was valued at $49,000 ($72,000 value of the house, plus $500 for the Honda, plus $1,500 for the Toyota, less $25,000 of marital debt).

The decree awarded each party the personal property in his and her possession, and we note that it is not entirely clear who had possession of some of those items of personal property. We also agree with Taj that the decree does not explicitly set forth the value of the personal property in the marital estate. However, a review of the record reveals that Taj assigned a value to the personal property of $8,001, including the $1,500 value for the Toyota, which we previously acknowledged was in Parveen's

possession and thus was awarded to her. We have included that $1,500 above in the estate apart from personal property. Therefore, the total value of the marital estate, using Taj's figures, was $55,501. Assuming that Parveen had all of the personal property in her possession (and it is clear from the record that this was not the case), the decree awarded her $31,501, or 57 percent of the marital estate, while Taj received $24,000, or 43 percent of the marital estate.

Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). We conclude that where Parveen was awarded at most 57 percent of the marital estate and Taj 43 percent, such a division is within the general rule and was not an abuse of discretion. We accordingly conclude that the district court's property division was not an abuse of discretion.

## VI. CONCLUSION

The district court erred in concluding that the parties' youngest daughter was not emancipated and ordering Taj to pay child support. The district court's property division and order of alimony, however, were not an abuse of discretion. The district court's decree is vacated as to child support and affirmed in all other respects.

AFFIRMED IN PART, AND IN PART VACATED.

HENDRY, C.J., not participating.