IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

TUCKER-THOMAS V. THOMAS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RHONDA TUCKER-THOMAS, APPELLANT,

V.

JOHN DAVID THOMAS, APPELLEE.

Filed February 28, 2017.    No. A-15-982.

Appeal from the District Court for Dakota County: PAUL J. VAUGHAN, Judge. Affirmed.

Michele M. Lewon, of Kollars & Lewon, P.L.C., for appellant.

Lindsey Buchheit for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Rhonda Tucker-Thomas appeals from a decree of dissolution entered by the district court, which decree dissolved her marriage to John David Thomas, divided the marital assets and debts, and awarded her alimony of $500 per month for approximately seven years. On appeal, Rhonda asserts that the district court erred in awarding her too little alimony, in its distribution of the marital assets and debts, and in failing to order John to pay her attorney fees. For the reasons set forth herein, we affirm the decision of the district court in its entirety.

## BACKGROUND

Rhonda and John were married on May 14, 1994. No children were born of the marriage, but Rhonda has two children from a previous relationship. By the time of the dissolution proceedings, both of Rhonda's children were adults.

- 1 -

At the time of the parties' marriage, Rhonda worked full-time for Menards, a home improvement store. She remained working at Menards until August 2013. At that time, she quit her job due to a work-related injury she suffered in December 2011. Rhonda believed that by August 2013, she was no longer capable of performing her job duties at Menards. She also believed that the store's managers failed to tailor her job requirements to her physical restrictions. Rhonda has not been employed since leaving Menards.

John has been employed at Great West Casualty as a systems analyst since March 2001. He has been promoted once during his tenure at the company, but he believes that he is not likely to be promoted further.

In March 2015, John moved out of the marital home. He now resides in a one-bedroom apartment. After John moved out, Rhonda continued to reside in the marital residence. Rhonda's adult son lives in the residence with her.

On April 13, 2015, Rhonda filed a complaint for dissolution of marriage. In the complaint, Rhonda specifically asked that the parties' marriage be dissolved, that their marital assets and debts be equitably divided, and that she be awarded alimony and attorney fees.

John filed an answer on April 22, 2015. In the answer, he agreed that the parties' marriage should be dissolved, but he requested that neither he nor Rhonda be awarded alimony and that both he and Rhonda pay their own attorney fees.

On August 13, 2015, the district court entered a temporary order awarding Rhonda $2,000 per month in temporary alimony and ordering John to pay $2,500 of Rhonda's attorney fees.

Shortly after the entry of the temporary order, on September 19, 2005, a trial was held. At the trial, both parties testified concerning their work histories, contributions to the marriage, present finances, and marital property. In addition, both parties testified at length concerning Rhonda's work-related injury and her current ability to work. We will provide a more detailed recitation of the testimony of both parties and of the other evidence presented at the trial as necessary in our analysis below.

After the trial, the district court entered a decree of dissolution. The court divided the parties' marital assets and debts, awarded Rhonda alimony in the amount of $500 per month until she turned 62 years old, or, for approximately seven years, and ordered each party to pay his or her own attorney fees.

Rhonda filed a motion to alter or amend the decree, requesting that the district court reconsider its distribution of marital property, and in particular, its decision to allocate certain debt to Rhonda. She also asked that the court reconsider the alimony awarded to her and the decision to have each party pay their own attorney fees. Rhonda also asked that if the court declined to make any changes to the decree, that it provide further explanation for its reasoning. Ultimately, the district court denied Rhonda's motion to alter or amend. However, the court did provide a detailed order "to supplement the Court's decree."

Rhonda appeals.

## ASSIGNMENTS OF ERROR

On appeal, Rhonda asserts that the district court erred (1) in awarding her too little alimony; (2) in its distribution of the marital assets and debts; and (3) in failing to order John to pay her attorney fees.

## STANDARD OF REVIEW

An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, and this standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. See *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005).

## ANALYSIS

### ALIMONY

In the decree, the district court ordered John to pay Rhonda alimony in the amount of $500 per month until she turned 62 years old, or, for approximately seven years. The court explained its decision concerning the alimony award as follows:

> The court finds based upon the evidence that's submitted that [Rhonda] has experienced a work injury that has caused her to be unable to work[,] according to her claims here[,] for the last two years, but the Workers' Compensation records do not satisfy the Court that she is totally disabled.

> I do believe that she has problems with the injuries that she has and residual pain, but I also believe that she is capable of doing some work and earning some income.

> She also has surgical options available to her to try to alleviate her problems and should seriously consider pursuing that so that she could regain some additional work capacity.

> [John] during this 21-year marriage has been above and beyond what is normally expected of a spouse in support of his wife and her children and her grandchildren. They're not his children, but he has been very supportive of them through the 21 years taking on all sorts of expenses that didn't necessarily need to be his responsibility.

> The equities of the situation at this point do not amount to a situation where [John] should pay lifetime alimony to [Rhonda], nor should he pay the amount of alimony that [Rhonda] is requesting.

In her brief on appeal, Rhonda asserts that the district court erred in awarding her too little alimony. Specifically, she argues that the evidence presented at trial demonstrated that she needs more than $500 per month to pay her expenses and that she will continue to need alimony for more than the next seven years. To support her argument, Rhonda points to evidence in the record which

suggests that she is no longer capable of working due to her injury, that her monthly expenditures greatly exceed her monthly income, and that John makes sufficient income to afford to pay her at least $3,500 per month for the rest of her life.

Upon our review of the record, we cannot say that the district court abused its discretion in its award of alimony. As such, we affirm the decision of the district court.

In awarding alimony, a court should consider, in addition to the specific criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2016), the income and earning capacity of each party as well as the general equities of each situation. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004). The criteria in § 42-365 include:

> the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

Disparity in income or potential income may partially justify an award of alimony. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004).

We first address Rhonda's assertions that the district court erred in finding that she is capable of working and earning an annual income of at least $30,000. We note that, at trial, Rhonda claimed that she is incapable of working and earning any income. She testified that, due to her injury, she is not capable of returning to a job at a home improvement store. In addition, she also testified that she is not qualified for employment in any other area and that, even if she was qualified, her injury prohibits her from working. In fact, Rhonda testified that, due to her injury, she is not capable of working even on a part-time basis. Rhonda indicated that she has filed a claim requesting that she receive social security disability benefits. However, in her brief on appeal, Rhonda appears to also argue that if she is capable of working, that she no longer has an earning capacity of $30,000 per year, as found by the district court. Our evaluation of Rhonda's assertions will focus on the evidence presented and the arguments made at trial.

In addition to Rhonda's testimony that she is incapable of working and is, essentially, unemployable, she also testified that her pain "eliminates" her ability to function on a day-to-day basis. She cannot clean her house, she cannot do laundry, and she cannot put away groceries. She continues to use pain medication on a regular basis, but the efficacy of the medication has declined. Rhonda indicated that she has been told by her doctors that surgery is an option and that such surgery will eliminate some of her pain. However, Rhonda testified that she was unsure about whether she would have the surgery.

Contrary to Rhonda's testimony about her ability to work and her ability to function on a day-to-day basis, John testified that he believes that Rhonda is capable of working. In fact, he indicated that after her injury, he observed her to regularly perform household chores, work on repairs to the home, and do yard work, including pulling weeds. Rhonda's medical records support John's testimony. None of Rhonda's doctors have indicated that she is not capable of working. Rather, the records indicate that Rhonda can work with certain restrictions in place and that she can tolerate an eight hour work day with "varying physical positioning as needed."

The district court found that Rhonda is capable of working. In fact, in the court's order on Rhonda's motion to alter or amend judgment, the court specifically explained that its decision about Rhonda's ability to work "was based upon its opinion regarding the comparative degree of credibility between [Rhonda] and [John]." The court went on to state, "The only evidence of [Rhonda]'s total disability rendering her unable to work was her testimony to that fact. All of the other evidence contradicted her claim of being totally disabled."

Given the court's specific finding that Rhonda was not a credible witness, and given our deference to a trial court's determinations of witness' credibility, we conclude that the district court did not err in finding that Rhonda was capable of working despite her injury. See *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002) (where the evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another).

When we consider the district court's finding that Rhonda is capable of working, in addition to the other evidence concerning both Rhonda's and John's current financial circumstances, we cannot say that the court abused its discretion in awarding Rhonda alimony in the amount of $500 per month for seven years.

By the time of trial, Rhonda's income was comprised solely of her workers' compensation benefits, which total approximately $1,450 per month. These benefits were scheduled to end in February 2016. However, as we discussed above, Rhonda is capable of supplementing her current income by obtaining some type of employment. When Rhonda left her job at Menards, she was earning an annual income of approximately $30,000, or about $2,500 per month. In addition, Rhonda testified that she plans on electing to receive her social security benefits in approximately seven years, when she turns 62 years old. She indicated that at that time she will receive benefits in the amount of $864 per month. Rhonda also has a savings account with approximately $6,700 in it. This money is comprised of the remaining portion of a lump sum payment towards her total workers' compensation benefits. In considering Rhonda's current financial circumstances, we also take into account that Rhonda does not have a mortgage payment, as the marital residence was paid off during the marriage. In addition, John helped Rhonda purchase a new car shortly after their separation. This car is also completely paid for.

John's current net monthly income totals $4,600. At the time of trial, given the temporary order in place, John lived in a one-bedroom apartment and had a savings account with only $125 in it. He drove a thirteen-year old car and had minimal furnishings in his apartment. John testified that he was currently unable to set aside any money to save for a newer car or for his retirement. Both Rhonda and John agree that John financially supported Rhonda and her children throughout their 21-year marriage.

Rhonda asked the district court to award her alimony in the amount of $3,500 per month for the rest of her life. Rhonda's request equates to seventy-six percent of John's monthly income. Such an award is clearly not warranted. When we consider the parties' current financial circumstances in addition to the general equities of the situation, we find that the evidence presented at the trial supports the district court's decision to award Rhonda alimony in the amount of $500 per month for approximately seven years. We do note that if Rhonda's circumstances

change or if her physical condition worsens, she can request a modification of the amount or duration of the current alimony award.

DIVISION OF MARITAL ESTATE

In the decree, the district court calculated the parties' net marital estate to total $400,533.34. The court awarded Rhonda fifty-five percent of the marital estate, or approximately $220,630. The court awarded John forty-five percent of the marital estate, or approximately $179,900. Essentially, the court awarded Rhonda $40,727 more of the marital estate. Specifically, the court awarded Rhonda the marital home, a 2013 Ford Focus, the funds in her individual checking and savings accounts, which totaled $10,270.25, and one-half of John's retirement accounts. Her portion of those accounts totaled $179,110.82. The court also ordered Rhonda to pay certain marital debts, including, $12,364.41 in credit card debt which was accumulated during the marriage.

On appeal, Rhonda argues that the district court erred in its distribution of the net marital estate between the parties. Specifically, she asserts that the court should not have ordered her to pay $12,364.41 in credit card debt because she cannot afford to pay that debt, especially considering the limited amount of alimony awarded to her and her inability to work. Upon our de novo review of the record, we conclude that Rhonda's assertions about the property division lack merit.

Under § 42-365, the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008). In this case, Rhonda does not contest the district court's classifications of marital and nonmarital property or its valuation of any particular marital asset or liability. Rather, she focuses her argument on the third step of the division of property, the court's division of the marital estate between the parties.

Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). Section 42-365 provides, "The purpose of a property division is to distribute the marital assets equitably between the parties." That statutory section also indicates that in dividing the marital estate, a court should consider such things as the circumstances of the parties; the duration of the marriage; and the history of the contributions to the marriage by each party, including contributions to the care and education of the children and interruption of personal careers or educational opportunities.

The district court divided the net marital estate such that Rhonda received a greater percentage of the estate. Rhonda was awarded fifty-five percent of the estate, while John received forty-five percent of the estate. Accordingly, Rhonda received more than one-half of the estate. Given the equities of the parties' circumstances, including, Rhonda's ability to engage in gainful employment and her being awarded the marital home with no remaining mortgage and a brand

new, paid for, car, the district court did not abuse its discretion by awarding Rhonda too little of the marital estate.

Moreover, we note that the majority of the credit card debt which Rhonda was ordered to pay, while marital in nature, did go towards paying for Rhonda's son's legal fees. The court explained its allocation of the credit card debt to Rhonda as follows:

[Rhonda] allowed her personal credit card bill to go up to $12,000 and asked the Court to order [John] to pay that while acknowledging that $7,500 of that bill was charged about four years ago for the purpose of paying legal fees for her adult son. That adult son has been living in the basement of the marital home for the past three and a half years. During that time the son has been fully employed but has paid no rent to the parties and has done nothing to pay his own legal expenses which his mother charged on her credit card. The Court finds that it is wholly inappropriate for [Rhonda] to expect that [John] pay this credit card bill and her son's legal fees. The son is not the child of this marriage and to take a position that [John] should be responsible for this bill is wholly unreasonable.

Upon our review of the record, there is no abuse of discretion in ordering Rhonda to pay the credit card debt as part of the property distribution, nor is there an abuse of discretion in the court's ultimate division of the marital estate.

ATTORNEY FEES

Prior to the trial, the district court entered a temporary order. As a part of that order, the court directed John to pay $2,500 towards Rhonda's attorney fees. In the decree entered after the trial, the court ordered that:

[t]he parties shall pay their own attorney fees, although the Court's ruling on temporary matters wherein the Court ordered [John] to pay [Rhonda]'s temporary attorney fees of $2,500 remains in effect.

The court explained its decision not to award Rhonda additional attorney fees in its order denying Rhonda's motion to alter or amend the judgment. Therein, the court explained,

The Court did not award any attorney fees because it appears that the case took much more time and effort due to the unreasonable positions taken by [Rhonda]. This along with the additional marital equity awarded to [Rhonda] would make further attorney fees inappropriate.

On appeal, Rhonda asserts that the district court erred in failing to order John to pay attorney fees in addition to the $2,500 he was ordered to pay in the temporary order. Specifically, Rhonda asserts that the evidence revealed that she does not have the ability to pay for her attorney fees and that the court's decision left her "destitute." Brief for appellant at 31. Upon our review of the record, we do not find that the district court abused its discretion in failing to award Rhonda additional attorney fees.

An award of attorney fees is discretionary and will not be disturbed on appeal absent an abuse of discretion. *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005). The award of

attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Id*. Customarily in dissolution cases, attorney fees and costs are awarded only to prevailing parties or assessed against those who file frivolous suits. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

Rhonda presented an attorney fee affidavit at trial, showing that up to trial, she had incurred legal fees from her attorney in the amount of $10,092. John was ordered to pay $2,500 towards Rhonda's attorney fees, leaving Rhonda with attorney fees in the amount of $7,592. While Rhonda argues that she is simply unable to pay for these fees, there is evidence in the record to support the court's decision not to award Rhonda any further attorney fees. First, as we discussed more thoroughly above, Rhonda has the ability to maintain gainful employment to improve her financial circumstances. In addition, Rhonda has approximately $6,700 in a savings account and she does not have a mortgage or a car payment. Rhonda also received a greater portion of the marital estate, including one-half of John's retirement accounts.

In addition to the evidence that Rhonda has the ability to pay her own attorney fees, there was also evidence that John made repeated efforts throughout the proceedings to decrease his and Rhonda's attorney fees, but that his efforts were frustrated by Rhonda's actions. For example, John initiated an informal discovery process, which was not successful. He also paid for the parties to attend mediation. The mediation was also not successful.

Based on the evidence presented at the trial, we cannot say that the district court abused its discretion in failing to order John to pay attorney fees in addition to the $2,500 he was ordered to pay in the temporary order. As such, we affirm the decision of the district court.

## CONCLUSION

Upon our review of the record, we find that the district court did not abuse its discretion in its award of alimony to Rhonda, in its distribution of the marital estate, or in its failure to order John to pay Rhonda's attorney fees. Accordingly, we affirm the decision of the district court in its entirety.

AFFIRMED.