IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

FISCHETTO V. FISCHETTO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VICTORIA FISCHETTO, APPELLANT AND CROSS-APPELLEE,

V.

BARRY FISCHETTO, APPELLEE AND CROSS-APPELLANT.

Filed September 24, 2019.    No. A-18-917.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

John A. Kinney, of Kinney Mason, P.C., L.L.O., for appellant.

Angela Dunne and David Pontier, of Koenig Dunne, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

On June 15, 2018, the district court for Sarpy County entered a decree dissolving the marriage of Victoria Fischetto and Barry Fischetto. Victoria appealed and Barry cross-appealed, with both parties assigning error to the court's alimony award. Because we find that the court did not abuse its discretion in its alimony award, we affirm.

### STATEMENT OF FACTS

Victoria and Barry were married in July 1995, in Hackensack, New Jersey. Two children were born to the parties, but only one was a minor at the time of the divorce proceedings. Victoria graduated from Monmouth College in 1991 and was a stay-at-home mother for approximately 10 years during the marriage. Barry graduated from St. Thomas Aquinas College in 1991 with a Bachelor of Science degree in business and later received an MBA from Long Island University

- 1 -

in 1999. Victoria testified that she moved four times throughout the marriage for the benefit of Barry's career advancement. During the course of his career, Barry served as an executive with several companies as we document in more detail below.

The parties separated in 2016 and consented to the terms of a separation agreement which divided their assets and which included a provision for alimony. The district court subsequently issued a decree of legal separation which adopted the terms of the parties' voluntary agreement. Prior to the decree of legal separation, Barry was Chief Operating Officer at Millard Refrigeration and SK Food Group and Senior Vice President of Operations at Farmer Brothers Company. At Millard Refrigeration, he earned $275,000 per year with a targeted bonus of 50 percent of his annual salary and a long-term incentive plan. While employed with SK Food Group, he earned $300,000 per year with a targeted bonus of 75 percent of his annual salary and long-term incentive plan. At Farmer Brothers, he earned $300,000 per year with a targeted bonus of 55 percent of his annual salary and a long-term incentive plan.

In 2016, the year the decree of legal separation was entered, the parties utilized their respective earning capacities for purposes of stipulating to alimony, attributing $1,560 per month to Victoria and $30,626 per month to Barry. The December 2016 decree of legal separation required Barry to pay $5,000 in monthly alimony to Victoria from November 1, 2016, to August 1, 2019, at which time the monthly alimony award increased to $7,000 from September 1, 2019, to September 1, 2026. Barry was also ordered to pay $2,043 in monthly child support for one child.

A few months later, in March 2017, Victoria filed a complaint for dissolution of marriage. Barry filed an answer with a counterclaim requesting modification of the alimony awarded in the decree of legal separation. In furtherance of that claim, Barry alleged that he had resigned from Farmer Brothers effective February 13, 2017, and had received a $150,000 severance package. After Barry resigned from his job, and following a vacation to Mexico, in August 2017, Barry signed an employment agreement with MMMG, located in California, to work as Senior Vice President of Operations. His compensation included an annual base salary of $250,000 with the potential to earn bonuses amounting to 25 percent of his base salary. In order to accommodate his new position with MMMG, Barry moved to California and signed a lease for a luxury apartment costing $4,374 per month.

The dissolution trial was held in March 2018. At trial, Barry asserted he was forced to resign from Farmer Brothers because of a fraud lawsuit pending against him in Nebraska concerning the sale of a Nebraska residence. Despite this, Barry testified the Nebraska residence was sold for a $135,000 loss because he believed he had an agreement with Farmer Brothers that the company would reimburse him for the loss. However, due to his subsequent resignation, Barry testified Farmer Brothers refused to reimburse him. Barry implied he lost his job due to Victoria's actions leading to the fraud lawsuit. Victoria testified she relied on the guidance of the real estate agent in filling out her disclosure forms.

In contrast, Victoria testified Barry's job loss had more to do with his arrest for theft than the pending fraud lawsuit. She explained Barry called her after he was arrested in Texas for not paying a cab fare. When questioned about the incident, Barry admitted he was arrested for theft relating to the cab incident but denied it impacted his employment.

After trial, the district court made findings regarding the parties' income, living expenses, and equities. The court found that, at the time of the decree of legal separation, Barry's gross

monthly income was $30,626, and his net monthly income after taxes was $17,886. Due to Barry's changing jobs, the trial court found Barry's current gross monthly income was $22,431, which was the average of Barry's gross yearly salary of $250,000 and his earned gross yearly bonus of $19,178. Based on the evidence of Barry's employment and employment history, the trial court found Barry's "bonus will increase over time to put his gross yearly salary including bonus, at or near what was contemplated at the time of the legal separation." The trial court noted that, although Barry's net monthly income after tax at the time of dissolution was $14,203, his earning capacity remained the same.

Concerning Victoria's income, the trial court found that when the decree of legal separation was entered, her gross monthly income was $1,560, a minimum-wage earning capacity, and her net monthly income after taxes was $1,322. Since the entry of the decree of legal separation, Victoria gained employment at $16.50 per hour and had a gross monthly income of $2,860 with a net monthly income after taxes of $2,474.

As for living expenses, the trial court found Barry's current monthly living expenses, including alimony and child support ordered in the decree of legal separation, totaled $18,019. The trial court noted Barry's expenses appeared to be exacerbated by rent paid for a luxury apartment, although no evidence was offered listing comparable rent for non-luxury apartments in the same location. For Victoria, the trial court found her current monthly living expenses, including costs sustained for the support of the minor child, were $6,635. The court found that these expenses would decrease by $2,043 in August 2019, when the minor child reached the age of 19.

The equities considered by the trial court included findings related to the Texas marital residence, the parties' 2016 taxes, and COBRA costs. According to the decree of legal separation, Barry was to refinance the Texas residence and was required to pay Victoria 50 percent of the current equity of the residence. The residence was valued at $143,168, meaning Victoria was entitled to $71,584. Barry testified that, due to his job change, he was unable to refinance the residence and told Victoria that they would have to sell the residence. The trial court found that, from February to October 2017, Victoria refused to cooperate in the sale of the residence. The trial court noted that Barry moved to California in September 2017 to start his new employment at MMMG. However, the Texas marital residence did not sell until February 2018 causing Barry to incur approximately 6 months of additional expenses to maintain the Texas marital residence. The trial court found Barry incurred $29,112 in maintenance costs, which included six monthly mortgage payments at $4,278 and 6 months of utilities at $574 per month. The trial court also found Barry spent $2,849 to stage the residence for sale and $5,500 in repairs needed to sell the residence. After the residence sold, Victoria received $71,854, but Barry only received $29,750. That division was a product of their original decree of legal separation.

As for the parties' 2016 taxes, the trial court found Victoria received a 2016 federal and state tax refund of $4,040. However, Barry incurred a $6,542 tax liability for 2016. Under the terms of the decree of legal separation, Barry was to maintain health insurance on Victoria so long as reasonably available to Barry through employment. Yet, the trial court found that even after Barry lost his employment with Farmer Brothers, he continued to provide health insurance on Victoria through COBRA, which cost $602 per month for 4 months.

Based on these circumstances, the trial court found alimony should be reduced from the sum originally set forth in the decree of legal separation (originally set at $5,000 from November

1, 2016, to August 1, 2019, and $7,000 from September 1, 2019, to September 1, 2026) and ordered Barry to pay Victoria alimony of $6,000 per month starting September 1, 2019, and ending August 1, 2025, noting this award replaced the alimony obligations contained in the decree of legal separation.

## ASSIGNMENTS OF ERROR

On appeal, Victoria assigns, restated, that the district court erred in (1) making findings of fact that were not supported by the record and using those findings to justify a change to alimony, (2) modifying alimony despite making a finding that Barry's earning capacity had not changed since the decree of legal separation, (3) modifying or amending the alimony award to terminate for a period of time and then continue, and (4) failing to apply *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992), to the facts at issue.

Barry cross-appealed contending that the district court erred in determining the alimony award was based on an earning capacity for Barry that was unsubstantiated by the evidence.

## STANDARD OF REVIEW

An appellate court reviews a trial court's alimony determinations de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). Under this standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice. *Id*.

## ANALYSIS

### FINDINGS OF FACT NOT SUPPORTED BY RECORD

The district court found that there was good cause to modify the alimony award provided in the decree of legal separation to the final award in the dissolution decree. Victoria first argues that the facts used by the court in finding there was "good cause" to support a modification were not supported by the record. Inherent in both the court's award and Victoria's argument is that a modification of an alimony award from a separation decree to a dissolution decree must be supported by a showing of good cause. However, the Nebraska Supreme Court recently found to the contrary in *Connelly v. Connelly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

In *Connelly*, the trial court held that, in order for the appellant, Valerie Connelly, to obtain a modification of an alimony award from the court-ordered separation decree, she had to demonstrate a "change of circumstances" which dictated that result. Valerie appealed from that ruling assigning that no such change of circumstance was required by the applicable statutes. After reviewing the terms of Neb. Rev. Stat. § 42-365 (Reissue 2016) (governing decrees of dissolution) and Neb. Rev. Stat. § 42-368 (Reissue 2016) (governing decrees of separation), the Nebraska Supreme court held:

> This court held in *Pendleton v. Pendleton*[, 242 Neb. 675, 496 N.W.2d 499 (1993),] that the prohibition against modifying a decree of dissolution to provide alimony when none was awarded in the original decree was applicable only in cases involving dissolution, and inapplicable in the case of legal separation. We explained that the definition of legal separation set forth in § 42-347(7) contained no provisions similar to the language set forth

in § 42-365 dealing with alimony in a dissolution action. We further explained that the language in Neb. Rev. Stat. § 42-366(6) (Reissue 2016) and § 42-368 specifically stated that the prohibition against modifying a decree did not apply to a decree of legal separation. Finally, we noted that res judicata did not preclude the district court from awarding alimony in the dissolution decree.

As in *Pendleton,* we find that because § 42-347(7) contains no provisions similar to the language set forth in § 42-365, we must construe these statutes separately. And because we construe the decree of legal separation and the decree of dissolution separately, we find that an award of alimony in a decree of dissolution is not equivalent to a modification of an award of alimony in a decree of legal separation such that it is modifiable only upon a finding of good cause under § 42-365. Furthermore, we note that by its terms, § 42-365 is applicable only to an alimony award in a decree of dissolution and makes no mention of a decree of legal separation.

We hold that Valerie was not required to show a change of circumstances for purposes of good cause to modify the award of alimony awarded in the decree of legal separation. Instead, the district court should have determined a reasonable award of alimony based on the criteria set forth in § 42-365.

*Connolly*, 299 Neb. at 109-10, 907 N.W.2d at 697-98.

Having determined that Valerie was not required to show good cause in order to modify the separation decree, the *Connolly* court then turned to whether the alimony award issued by the trial court amounted to reversible error. In doing so the Nebraska Supreme Court held:

Next, we turn to whether the district court error was prejudicial. Error without prejudice is not a ground for reversal. Both in dividing property and in considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party, the polestar being fairness and reasonableness as determined by the facts of each case.

*Id.* at 110, 907 N.W.2d at 698.

Likewise, although the district court determined here that there was good cause to modify the alimony award, it was not required to find good cause in order to modify the alimony award from the decree of legal separation. Instead, the district court needed to independently consider the above stated criteria in determining the appropriate award at the time of dissolution. Here, the district court made numerous findings of fact in connection with entering the alimony award. Those facts include specifics with regard to the parties' current and former monthly income and expenses, none of which are called into question by Victoria or Barry. Additionally, we note that the parties originally voluntarily agreed to the alimony award of $5,000 per month until August 2019 and $7,000 per month from September 2019 to September 2026 on the basis of Barry's then-current gross income of $30,000 per month. In short, Victoria is arguing that the court's reduction of alimony to $6,000 per month was not warranted while Barry argues that the award is too much. Barry's argument is based upon the salary associated with his new job which does not

currently produce $30,000 per month along with his claim for expenses associated with his new living arrangement. Victoria argues that she believes the court reduced the award by $1,000 per month due to factual findings associated with the Texas home, its refinance, and eventual sale.

In *Wiedel v. Wiedel*, 300 Neb. 13, 20-21, 911 N.W.2d 582, 589 (2018), the Nebraska Supreme Court stated:

> The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. The ultimate criterion is one of reasonableness. An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.

Based upon the fact that the parties agreed to an alimony award ranging from $5,000 to $7,000 which was incorporated into the decree of legal separation; based upon the current earnings and living expenses of the parties in relation to their earnings and expenses when the voluntary alimony award was first decreed; and based upon the criterion set forth in § 42-365, we cannot say that the district court abused its discretion in fixing the alimony award at $6,000 per month. In making that determination, we note that, although Barry currently makes less than he did at the time of the entry of the decree of legal separation, his salary is subject to future bonuses and increases, he has proven himself marketable at the gross income range used by the parties to set their original alimony schedule which was incorporated into the decree of legal separation, and without having to carry the costs associated with the Texas home which is now sold, Barry is fully capable of meeting his reasonable costs of living subject to a $6,000 alimony award. The award, when coupled with Victoria's salary and earning capacity, allows her to meet her reasonable costs of living.

Victoria's specific assignment of error focuses on the court's findings with respect to the Texas home and eventual sale thereof. We find that, notwithstanding the events associated with the Texas home, the alimony award is reasonably set in accordance with the criterion established by law for the provision of alimony. Accordingly, the court did not err in setting alimony as it relates to the trial court's findings involving the Texas home.

BARRY'S EARNING CAPACITY

Victoria next argues that the district court erred in modifying the alimony award from the decree of legal separation once it found that Barry's earning capacity had not changed. As we noted in the last section, the trial court is not required to find a change in circumstances in order to change an alimony award from the amount awarded in a decree of legal separation. Stated differently, the trial court must independently analyze the factors set forth in § 42-365 in determining the appropriateness of an alimony award in an original dissolution decree. Accordingly, in determining Barry's earning capacity in relation to the alimony award, the trial court was not in any way tied to the alimony awarded in the decree of legal separation. Because the court's alimony award in the dissolution decree, when independently analyzed under the

criterion set forth in § 42-365, was not untenable nor deprived any party of a substantial right or just result, the court did not err in setting the award of alimony.

MODIFYING ALIMONY AWARD TO TERMINATE FOR PERIOD OF TIME

Victoria next assigns that the district court erred in terminating the alimony award dictated by the decree of legal separation for a period of time and commencing the alimony award from the dissolution decree in September 1, 2019. In support of this assignment of error, Victoria argues, "It is unknown why the trial court meted out this awkward and humiliating justice. . . . Completely eliminating her alimony for a year makes little sense unless it was the intention of the trial court to somehow teach Victoria a lesson." Brief for appellant at 20.

Victoria does not cite any legal authority in connection with her argument, nor do we perceive the district court's ruling as either punitive or a lesson. The court found that the exigencies associated with the Texas home cost Barry significant sums of money to carry the home, list it, repair it, stage it, and eventually sell it for significantly less than originally contemplated by the parties. Victoria then received the equity in the home as contemplated by their original agreement whereas Barry received the lesser sum. Following the loss of his job, Barry did not generate income until he found a suitable replacement position. Taken together, regardless of fault, that was the financial outcome in relation to the Texas home and Barry's employment. Because of the financial disparity caused by these conditions, we do not find the court's interruption of alimony for a period of time which equates somewhat with the cost of this unforeseen financial consequence as an abuse of discretion.

FAILURE TO APPLY <em>DESJARDINS V. DESJARDINS</em>

Victoria finally argues that the district court failed to apply the principles espoused by the Nebraska Supreme Court in *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992). *Desjardins* involved an attempt by one party to modify a dissolution decree originally issued in connection with the consent of the parties. In such cases, the court held:

> "'[a] consent decree is usually treated as an agreement between the parties. It is accorded greater force than ordinary judgments and ordinarily will not be modified over objection of one of the parties.'" *Lawson v. Lawson,* 185 Neb. 164, 167, 174 N.W.2d 202, 205 (1970) (quoting *Detter v. Erpelding,* 176 Neb. 600, 126 N.W.2d 827 (1964)).

*Desjardins*, 239 Neb. at 881-82, 479 N.W.2d at 454. However, *Desjardins* involved an attempted modification of a dissolution decree, not an analysis of a dissolution decree in relation to a former decree of legal separation. As we previously explained, in connection with decree of legal separation and decrees of dissolution, issues of alimony involve separate and distinct analysis under the respective statutory constructs. Accordingly, an alimony award in connection with a decree of dissolution requires its own analysis, independent of the analysis associated with the former decree of legal separation. As such, *Desjardins* is distinguishable from the case at bar. Although the parties' former decree of legal separation, which was entered based upon the parties' agreed-upon terms, is a factor that the court may weigh in connection with analyzing the dissolution decree, its terms were not dispositive. The district court did not err in failing to apply the principle expressed in *Desjardins*.

## EARNING CAPACITY

In Barry's cross-appeal, he argues that the record does not support the trial court's determination that his earning capacity was not reduced from the time of the parties' decree of legal separation.

It is true that earning capacity, including prospective earnings, is the basis used in awarding alimony. *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). For instance, in *Millatmal*, the Nebraska Supreme Court held that the husband's earning capacity was substantially greater than the $1,000 per month he was earning as a cabdriver and part-time interpreter.

Barry similarly argues that his current position pays him less than the approximately $30,000 per month he was making at the time of the entry of the decree of legal separation. Although that is a correct statement of fact, the district court noted Barry's ability to obtain bonuses, salary increases, and noted Barry's history of marketability as an executive at this salary range. Further, in light of the trial court's adjustment downward from the original alimony award in the decree of legal separation along with our review of the parties' individual expenses, we cannot say that the court abused its discretion in setting the alimony award.

## CONCLUSION

We hold that while the district court erred in treating alimony in a decree of dissolution as a modification of the alimony award entered in the decree of legal separation, the error was not prejudicial and the court did not err in setting the final alimony award in the dissolution decree.

AFFIRMED.